**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                              **Case No. 1:12-cv-102-SMP-GRJ**

**SAMIM ANGHAIE,**
**SOUSAN ANGHAIE,**
**d/b/a NEW ERA TECHNOLOGY, INC.**
**and**
**NEW ERA TECHNOLOGY, INC.,**

      **Defendants.**

_____

## MOTION FOR SUMMARY JUDGMENT

Comes now the United States of America, Plaintiff and, pursuant to Rule 56, Fed. R. Civ. P., moves for summary judgment on the grounds that there is no triable issue of fact and that the Government is entitled to judgment as a matter of law.   In support of said motion, below is the Government's memorandum.

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

    **A.**    **Applicable Standard for Granting Rule 56 Motions for Summary Judgment**

In deciding a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).  The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact dispute with respect to those issues on which the movant bears the burden of proof.  For any matter on which the non-movant carries the burden of proof, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment evidence that there is an issue of material fact so as to warrant a trial.  *Celotex*, 477 U.S. at 322-23.

The non-movant's burden *may not* be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.  *Matsushita v. Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Mere existence of some alleged factual dispute will not defeat the Defendant's properly supported motion for summary judgment.  The factual dispute must be material, meaning it must change the outcome of the case.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

**B.**      **Applicable law under the Federal Civil False Claim Act**

The government's complaint is founded on the Civil False Claims Act (FCA), as amended, Title 31 United States Code, Section 3731.[1]  The intent of the FCA was "to protect the Treasury against the hungry and unscrupulous host that encompass it on every side, and should be construed accordingly." as reprinted in 1986 U.S.C.C.A.N. 5276 (*quoting United States v. Griswold,* 24 F.361, 366 (D.Ore.1885)).  To prevail on a FCA claim, the government must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States v. R & F Properties of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir.2005), *cert. denied,* 549 U.S. 1027, 127 S.Ct. 554, 166 L.Ed.2d 423 (2006).

Subsection (e) specifically addresses the availability of summary relief.  It states:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction

---

[1]The FCA was amended and renumbered in 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA"). Pub.L. No. 111–21, 123 Stat. 1617 (2009). Given the dates of the ongoing fraud, these amendments do not apply retroactively to this case. *id.* § 4(f), 123 Stat. at 1625; *see also Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1323 n. 2, 1327 n. 3 (11th Cir.2009). Citations herein refer to the FCA without the 2009 amendments.

as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C.A. § 3731

Recognizing the earlier conviction as a form of res judicata, the Eleventh Circuit noted in the case of *U.S. v. Killough,* 848 F.2d 1523, 1528 (11th Cir 1988) that:

> When an issue is resolved in favor of the United States in a criminal prosecution, that issue may not be contested by the same defendant in a subsequent civil suit brought by the government. *Tomlinson v. Lefkowitz,* 334 F.2d 262, 264 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). This rule applies in all civil cases brought by the United States where a defendant previously has been found guilty, either by a jury verdict or by a guilty plea. *See Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *In re Raiford,* 695 F.2d 521 (11th Cir.1983). *See also Sell v. United States,* 336 F.2d 467 (10th Cir.1964) (in False Claims Act case, prior criminal conviction estops defendant contesting same issue in subsequent civil proceeding).

There is an analogous federal common law estoppel principle also present.  The preclusive effect of a criminal conviction on future civil proceedings is well established. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 104 n. 22, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 95 L.Ed. 534 (1951). Indeed, "[a] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *New York v. Julius Nasso Concrete Corp.,* 202 F.3d 82, 86 (2d Cir.2000); *see also Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt Int'l B.V. v. Schreiber,* 327 F.3d 173, 180 (2d Cir.2003).

Under the federal common law principle:

> [a] judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Stichting*, 327 F.3d at 180 n. 2 (citing *NLRB v. Thalbo Corp.,* 171 F.3d 102, 109 (2d Cir.1999)).

Thus, under federal common law, a defendant is precluded from contesting any issue resolved in an earlier criminal prosecution.  As the Supreme Court noted in the case of *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568-569, 71 S.Ct. 408, 414 (U.S. 1951):

> The evidentiary use which may be made under Section 5 of the prior conviction of respondents is thus to be determined by reference to the general doctrine of estoppel. As this Court has observed, that 'principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction.' *Frank v. Mangum,* 1915, 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969; *Sealfon v. United States*, 1948, 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180. It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding. (Citations omitted) Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution. See *Frank v. Mangum*, supra, 237 U.S. at page 334, 35 S.Ct. at page 590; *United States v. Meyerson*, D.C.S.D.N.Y. 1928, 24 F.2d 855, 856. In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment. Cf. *Commonwealth v. Evans*, 1869, 101 Mass. 25.

340 U.S. at 568-569

As set out in the Statement of Facts (SOF), the criteria for estoppel under both federal common law and the FCA  are plainly satisfied: the criminal case ands the instant civil case both presented the same issues of the Defendants' fraud in inducing the Government agencies to contract with NETECH and the falsity of their submissions to the Government for payments; the Defendants had a full and fair opportunity to litigate the relevant issues in the criminal action, where they were represented by counsel; and the issues relevant to the civil action were actually litigated, actually decided, and were necessary to support the jury's guilty verdict.

Indeed, the proof of the same elements necessary to convict an individual for criminal violations of both a conspiracy to defraud and substantive wire fraud charges are the same elements necessary to establish the right to recovery under the False Claims Act (FCA).  Both require that a person intentionally participate in a scheme to defraud another and both include an element of delivery of a claim. *See United States v. R & F Properties of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir.2005), *cert. denied,* 549 U.S. 1027, 127 S. Ct. 554, 166 L. Ed.2d 423 (2006) (elements of a FCA case) and *United States v. Bradley*, 644 F.2d 1213, 1239. (11th Cir. 2011)(elements of wire fraud).  The only arguably missing element from the criminal case is that it is not necessary to prove the fraud succeeded and the victim lost money, although the criminal record clearly demonstrates that the United States paid money based on false claims and thus a loss occurred.

**C.      Argument**

**1.      Factual summary**

New Era Technology, Inc. (NETECH) was a Florida for profit corporation formed in 1989 by Sousan Anghaie and Samim Anghaie.  SOF § 1.  Throughout the period of time set out in the complaint, the defendants never identified any employees but Sousan Anghaie in their business reports filed with the State of Florida.  SOF § 2.  The truth of those reports is supported by the criminal trial.  At best, those people who were superficially involved in the government contracts, and not merely named, were not employees but independent contractors.[2]  An example can be found at SOF § 66.

From NETECH's inception until approximately 2007, the defendants Samim and Sousan Anghaie, acting through their company, NETECH, submitted approximately 13 applications to participate in the Small Business Administration's programs, Small Business Innovation Research Program (SBIR) and Small Business Technology Transfer program (STTR), as administered by the Department of Air Force (AF) and the National Aeronautical and Space Administration, (NASA), both federal agencies.  SOF § 3.

As discussed in more detail below, the purpose of both the SBIR and STTR programs is to give funding opportunities to small businesses to make those businesses more competitive.  *See* 15 U.S.C. § 638(a);  see also 15 U.S.C. § 631(a).  The

---

[2]These individuals' status as independent contractors does not alter the fraud as both agencies asked and were told there were no subcontractors and acted in reliance on those representations.  SOF § 29, 55, 56.

government's objective, both statutorily and contractually, is not to confer a benefit upon itself but rather to encourage innovation.  *See* 15 U.S.C. § 638(a).

The complaint is concerned with four specific funded contracts identified as NNC07CA14C (N14C), NNM04AB19C (N19C), NNC06CA72C (N72C), and FA9550-06-C-0099 (AF99), funded either under the SBIR or the STTR program, under which the defendants received government money based entirely on materially false representations which they would not have received but for their fraudulent misrepresentations.[3]  *See* Complaint, Counts One through Twenty-two.

When the defendants submitted proposals for funding for contracts N14C, N19C, N72C, and AF99, they misrepresented a number of material facts, which led to their selection for funding.  *See* SOF, §§ 45 through 71, 72 through 76, 79 through 85, and 86 through 91.

In addition, each time the defendants submitted invoices for partial payments, they re-submitted the material misrepresentations.  *Id.; See also*, SOF, §§ 69, 75, 76, 83, 90, 91.  They also submitted additional material fraudulent statements regarding the work being performed and those performing the work.  *See* SOF §§ 45 through 92.

As a result of the defendants' fraudulent misrepresentations, under the four contracts, the government paid the defendants, through NETECH, a total of $939,443.38.  *See* SOF, § 119.

---

[3]A number of other contracts are discussed in the government's attached statement of material facts, which are germane to demonstrate that the misrepresentations which led to the awarding on the contracts and the payment of money were neither accidental nor unintentional.

In a superseding indictment returned by the grand jury on December 20, 2010, the grand jury charged the defendants Samim and Sousan Anghaie, with sixty-two counts, detailing violations of federal law referencing all of the contracts referred to in the civil complaint.  *See* Superceding indictment, Case 1:09cr00037-SPM-GRJ, Doc. 69.

In Count One both were charged between the dates July 13, 1999 and June 8, 2009 with conspiring with each other and others to defraud the United States and to obtain money and property by the means of materially false and fraudulent pretenses, representations, and promises by transmitting, by wire, in interstate commerce, some communication in furtherance of said scheme, in violation of federal law. Superceding indictment, Case 1:09cr00037-SPM-GRJ, Doc. 69 at pgs 1-32.

Counts Two through Count Twenty-two detailed specific acts of fraud pertaining to NASA contract (N14C) in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pgs 33-34.

Count Twenty-three detailed specific acts of fraud pertaining to NASA contract 99-03.02-6016A in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 34.

Counts Twenty-four through Twenty-six detailed specific acts of fraud pertaining to NASA contract NAS8-0175, in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pgs. 34-35.

9

Count Twenty-seven detailed specific acts of fraud pertaining to NASA contract NAS8-01148 in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 35.

Counts Twenty-eight through Thirty-four detailed specific acts of fraud pertaining to NASA contract NAS8-02103 (N02103), in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pgs. 36.

Counts Thirty-five through Thirty-six detailed specific acts of fraud pertaining to NASA contract N19C, in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pgs. 35-36.

Count Thirty-seven detailed specific acts of fraud pertaining to NASA contract N72C in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 36.

Counts Thirty-eight through Forty-one detailed specific acts of fraud pertaining to Air Force contract AF, in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 36.

Count Forty-four detailed specific acts of fraud pertaining to un-awarded NASA contract 04X2.02-9885 in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 36.

Count Forty-five detailed specific acts of fraud pertaining to un-awarded NASA contract 04 X6.07-8159 in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 37.

Count Forty-six  detailed specific acts of fraud pertaining to un-awarded NASA contract 05 X10.03-9381,  in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 37.

Count Forty-seven detailed specific acts of fraud pertaining to NASA contract 06 X8.02-8476, in violation of the wire fraud statute.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 37.

Count Sixty-one detailed specific acts of willfully making material false back-dated documents pertaining to Dayroosh Shirvan., Travis Knight, and Ali Anghaie, knowing them to be false in violation of Title 18, U.S.C. 1001.  Case 1:09cr00037-SPM-GRJ, Doc. 69 at pg. 41.

On February 21, 2011, the Court issued a judgment of acquittal of the crimes set out in Counts Twenty-three through thirty-one, Forty-two, and Fifty-two through Fifty-Six (pertaining to money laundering) by reason of the expiration of the five year Statute of Limitation. Case 1:09cr00037-SPM-GRJ, Doc. 114 at pgs 1-6.

On February 22, 2011, the Court instructed the jury as to the elements of Conspiracy, Wire Fraud, and false statements to a federal agency.  Case 1:09cr00037-SPM-GRJ, Doc. 117 at pgs 1-32.

The jurors were instructed that in order to find the defendants guilty of an conspiracy to defraud the United States, the jury must find the existence of the following elements:

11

1)   two or more people in some way agreed to try to accomplish a shared and unlawful plan;

(2)   the Defendant knew the unlawful purpose  of the plan and willfully joined in it;

(3)   during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

(4)   the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Case 1:09cr00037-SPM-GRJ, Doc. 117 at pgs 1-32.

The jurors were instructed that in order to find the defendants guilty of an offense of wire fraud, the jury must find the existence of the following elements:

(1)   the Defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

(2)   the false pretenses, representations, or promises were about a material fact;

(3)   the Defendant acted with the intent to defraud; and

(4)   the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

Case 1:09cr00037-SPM-GRJ, Doc. 117 at pgs 1-32.

12

Finally, the jurors were instructed that in order to find a defendant guilty of making a material false statement to an agency of the United States, the jury must find the existence of the following elements:

(1)   That the Defendant made the statement as charged;

(2)    That the statement or documents were false;

(3)    That the falsity concerned a material matter;

(4)   That the Defendant acted willfully, knowing that the statement or documents were false; and

(5)   That the false statement or false documents were made or used for a matter within the jurisdiction of a department or agency of the United States, as charged.

Case 1:09cr00037-SPM-GRJ, Doc. 117 at pgs 1-32.

The jurors were instructed that a scheme to defraud included any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises.  Case 1:09cr00037-SPM-GRJ, Doc. 117 at pgs 1-32.

On February 25, 2011, the jury, after trial, found Samim and Sousan Anghaie guilty of the crimes set out in Counts One, Two through Nine, and Twelve through Twenty-two, Thirty-five, Thirty-seven, Thirty nine through Forty-one, Forty-four, and Forty-six through forty-seven, of the indictment.  Case 1:09cr00037-SPM-GRJ, Doc. 123 at pgs 1-5.  In order to find guilt, the jury must have found, by a higher standard of guilty beyond a reasonable doubt, that the defendants intentional devised a scheme to defraud

13

NASA and the AF, and submitted false writings in support of that fraud, leading to the federal agencies awarding federal funds to them.

On December 29, 2011, Samim Anghaie was adjudged guilty of Counts 1-9, 12-22, 35, 37, 39-41, 44, 46, 47, and 61 as set out in the indictment.

On December 29, 2011, Sousan Anghaie was adjudged guilty of Counts 1-9, 12-22, 35, 37, 39-41, and 46 -47.

The jury's findings of guilt, as based on the evidence it heard and saw during trial, as set forth in the SOF and as summarized below, establishes that the Defendants engaged in a scheme to defraud using their wholly owned Florida Corporation New Era Technology (NETECH) and during the course of which filed false claims for payment from the United States.  Those findings of guilt precludes the Defendants from contesting the Government's motion for summary judgment.[4]  Put directly, Samim and Sousan Anghaies' convictions "foreclose all questions relevant to civil liability" under either the general doctrine of collateral estoppel or the more specific FCA section.  See *United States v. Diamond,* 657 F. Supp. 1204, 1205 (S.D. N.Y. 1987), *U.S. v. Karron* 750 F. Supp.2d 480, 490 (S.D. N.Y. 2011).  Based on the forgoing, the remaining issue is one of damages, as discussed below.

**2.      Damages**

---

[4]While the Government believes that, given the specificity contained within the indictment, the guilty verdicts alone are sufficient to support the summary judgment motion, because of the complexity of the fraudulent scheme and number of fraudulently obtained contracts, the government has undertaken to detail the evidence heard by the jury during the course of the criminal trial in its attached SOF.

There are two aspects of damages in the instant case; actual damages and statutorily mandated penalties.  *See* § 3729(a)(1).[5]  Each will be discussed separately.

### a.      Actual damages

In determining what actual damages were caused by the defendants' fraud, the government submits that the question really becomes what was the benefit of the government's bargain with the Defendants' company NETECH.[6]  As set out summarily above and in more detail in the attached SOF, the Defendants in the instant case received federal funds as a result of contracts they improperly obtained through their company NETECH by virtue of a number of fraudulent material misrepresentations contained in various documents filed with the government agency involved.  However, these contracts were not standard procurement contracts.  Rather, the contracts were sponsored by the Small Business Administration through two programs, the SBIR and the STTR, as administered through two federal agencies, the National Aeronautical and Space

_____

[5]As set out in § 3729(a)(1), anyone knowingly submitting a false claim  is liable to the United States for a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus three times the amount of damages which the government sustained because of the defendant's fraudulent acts. In an appropriate case, the defendant is also liable for the Government for the costs of the civil action. § 3729(a)(3).

[6]The Supreme Court in *Cook County, Illinois v. United States ex rel. Chandler* explained that the FCA's treble damage provision is not the equivalent of classic punitive damages. 538 U.S. 119, 120, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003).  Because the FCA has no provision for compensatory damages, the treble damages amount is intended to repay the government for the expense of tracking down and prosecuting the fraud. *Id.*

15

Administration (NASA) and the United States Department of Air Force (AF).[7]   Since the

legislative history of the SBIR and STTR demonstrates that the values of the programs lie

not in innovation, but in innovation by eligible small businesses, it is clear that any

alleged end-product of the contracts obtained by fraud is valueless from the government's

standpoint.  Both the SBIR and the STTR were expressly written to foster

commercialization by the small businesses, not to produce rocket fuel or widgets for the

government.[8]  Each contract was awarded by either NASA or the Air Force after each

agency conducted a competitive review of contract proposals and selected the subject

contracts based on the defendants' misrepresentations.

Moreover, unlike the restitution issue presented in a criminal case, recoverable

damages are statutorily set out in the FCA.  In the case at bar, the government has

demonstrated both that its agencies were fraudulently induced to enter into a number of

contracts with NETECH which they would not have ordinarily entered into had they

known the true facts and paid the Defendants a total of $915,543.79 based on false

representations contained in the documents submitted for payment, including the work of

---

[7]There were other federal agencies that were defrauded by the defendants'
misrepresentations but the Statute of Limitations has run on the others.

[8]15 U.S.C. §§ 631(a), 631a & 638(a).

16

others, submitted as work performed under the contracts.[9]  Under the FCA, that actual

amount must be tripled to $2,746,631.37.[10]

In the companion criminal case, the Court reduced the restitution amount to

reflect the actual benefit received by the government.  However, unlike the Court's

decision in the criminal case, a different analysis comes into play here and therefore there

should not be any such reduction because the government was not seeking nor did it

receive any economic benefit.  Rather, it was seeking an intangible benefit - the ability to

encourage small business scientific development.  This being true, there was and can be

no economic, tangible, benefit to the agencies.  Indeed, the defendants' fraudulent

misconduct only resulted in multiple harms.  Because of their frauds, they received

contracts to which they were not entitled and other, honest and more deserving

companies were denied funding.  The fraud also hurt the integrity of the program,

resulting in further harm when Congress evaluates the propriety of continuing funding.

The funds for each  program are finite.  Finally, there is simply no way to measure the

innovations lost by not funding these other, deserving, small businesses.  The defendants'

misrepresentations went directly to the heart of the SBIR and STTR programs-their

---

[9]The defendant unlawfully took the work product of a number of individuals and put it in their reports as their own work.  SOF  § 66 (Evgeny Dyakov),  § 87, 88 (Leo Bitteker), and 109, 111 (Jared Squires).

[10]Moreover, the Government's actual damages should be tripled before the court considers any adjustment to the recoverable amount.  *See U. S. v. Bornstein* 423 U.S. 303, 316-317, 96 S.Ct. 523, 531 - 532 (U.S. 1976).

ability to perform research on technology that was novel and innovative.   As noted by

the court in *U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 530 F. Supp. 2d

888, 892 -900 (S.D. Tex.,2008):

> The government's objective, both statutorily and contractually, is not to
> confer a benefit upon itself. See 15 U.S.C. § 638(a). Instead, its goal is to
> give funding opportunities to small businesses to make those businesses
> more competitive. Id.; see also 15 U.S.C. § 631(a). If, for example,
> Congress had merely wanted the innovation for the Department of
> Defense, it had many other more straightforward means of achieving that
> goal. The SBIR and STTR programs could have been recodified under
> Chapter 63 of Title 15, entitled Technology Innovation. 15 U.S.C. § 3701
> et seq.  Or, they could have been added to Chapter 148 of Title 10
> authorizing cooperative agreements for research and development projects
> for the armed forces. 10 U.S.C. §§ 2511- 2519.  Congress did neither of
> these things.  It chose instead to enact the programs under the umbrella of
> the Small Business Act with the stated purpose of encouraging
> entrepreneurship and free competition. 15 U.S.C. § 631(a)(footnotes
> omitted).

530 F. Supp. at 892-900.

Courts which have considered the issue are in agreement that the benefit of the

bargain analysis does not apply in cases where the benefit had no tangible benefit. *See*

*United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 472–73 (5th

Cir.2009) (affirming award of damages based on full amount of Government grant

without offset).  In *United States v. TDC Management Corporation, Inc.*, 288 F.3d 421,

422-23 (D.C. Cir. 2002), the defendant TDC had contracted with the Urban Mass Transit

Authority to find private investors and sureties for minority enterprises wanting to bid on

large transportation construction projects.     The D.C. court found that the fraud

completely destroyed the value of the program, noting that the valuation of damages was

different from regular benefit of the bargain FCA cases, because the Program "did not

call for TDC to produce a tangible structure or asset of ascertainable value." *Id. See also*

*U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 530 F. Supp. 2d 888, 892 -900

(S.D. Tex.,2008).

Notably, even in those cases where the government had a tangible asset of value

at the end of the contract, if the end-product has no value to the government, then it is

entitled to full recovery. *See United States ex rel. Compton v. Midwest Specialties, Inc.*,

142 F.3d 296, 304 (6th Cir.1998).

**b.      Statutory penalties**

Under the FCA, the court must award a penalty of between $5,500.00 and

$11,000.00 per claim or invoice.  The imposition of the penalty is not automatic but must

be based on the fraudulent contract. *See Bornstein,* 423 U.S. at 311, 96 S. Ct. 523; *see*

*also United States ex rel. Marcus v. Hess,* 317 U.S. 537, 552, 63 S. Ct. 379, 87 L. Ed. 443

(1943); *Faulk,* 198 F.2d at 171. *But see U.S. ex rel. Longhi v. Lithium Power*

*Technologies, Inc.*, 530 F. Supp. 2d 888, 892 -900 (S.D. Tex., 2008).

In the case at bar, there were four contracts obtained fraudulently under which the

Government paid sums of money pursuant to twenty-one invoices submitted by the

defendants supported by additional misrepresentations.[11]   With each of the twenty-one

invoices the government paid, the defendants made material false statements in the

_____

[11]In *Bornstein,* the Court cautioned that courts should focus on "the specific conduct of
the person from whom the Government seeks to collect the statutory forfeitures." *Bornstein,* 423
U.S. at 313, 96 S.Ct. 523.

supporting documentation.  Accordingly, each invoice should be subject to penalty.  *See United States ex rel. Marcus v. Hess,* 317 U.S. at 543, 63 S.Ct. 379 (1943), *United States v. Krizek,* 111 F.3d 934, 939 (D.C.Cir.1997) ("The gravamen of these cases is that the focus is on the conduct of the defendant. The Court asks, 'With what act did the defendant submit his demand or request and how many such acts were there.' ") (citing *Miller v. United States,* 213 Ct.Cl. 59, 550 F.2d 17, 24 (1977)) (assessing five forfeitures because contractor sent five monthly billings even though each billing contained eleven separate invoices); *United States v. Woodbury,* 359 F.2d 370, 378 (9th Cir.1966) (ten forfeitures awarded on ten applications for payment containing numerous invoices each); *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.,* 46 F.Supp.2d 546, 554 (E.D.La.1999) *rev'd on other grounds* 244 F.3d 486 (5th Cir.2001) ("It is the number of applications for funds, and not the number of coded items on each application, or the number of invoices generated by the applications, or the number of contracts the applications represent, that determines the number of claims made"). Moreover, because the instant civil suit seriously under-represents both the impact of the fraud and the money lost by the United States, the higher figure of $11,000.00 or $231,000.00 should be imposed.  *See U.S. ex rel. Longhi v. Lithium Power Technologies, Inc*. 530 F. Supp.2d 888, 899 -901 (S.D. Tex. 2008)(highest penalty figure should be imposed because the defendants' fraud was systematic and knowing.)

Pursuant to Local Rule 7.1, the undersigned has discussed the instant motion with the defendants' counsel.  Defendants' attorney has informed the undersigned that he

cannot take a position regarding the motion without first reviewing the motion in depth. Defense Counsel has also advised that due to prior commitments, he will be unavailable to consider the motion until after February 25, 2013.  The undersigned has informed counsel that the government does not oppose a reasonable extension of any date within which to reply, if the defense requests one.

WHEREFORE, based on the forgoing, the Government prays that this Court enter judgment in favor of and against the Defendants, jointly and severally, in the amount of $$2,746,631.37, together with penalties totaling $231,000.00 for a total of $2,977,631.37, and for the costs of this action.

Respectfully submitted,

PAMELA C.  MARSH
United States Attorney


/S/ *Benjamin W. Beard*
BENJAMIN W. BEARD
Assistant United States Attorney
Florida Bar No. 0145746
U.S. Attorney's Office
Northern District of Florida
21 East Garden Street, Suite 400
Pensacola, Florida 32502-5673
(850) 444-4000



**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the government's motion for summary judgment

has been furnished by depositing a copy in United States mail, with sufficient postage to

Jon D. Uman, Esq., 604 NW 8th Place, Gainesville, Florida 32601, attorney for the

Defendants, this 15th day of February, 2013.




/S/ *Benjamin W. Beard*
BENJAMIN W. BEARD
Assistant United States Attorney