IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                          CASE NO. 1:12-cv-102-RS-GRJ

SAMIM ANGHAIE and
SOUSAN ANGHAIE,
individually and
d/b/a NEW ERA TECHNOLOGY, INC.,
and NEW ERA TECHNOLOGY,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

     The United States initiated this action by filing a Complaint pursuant to the False

Claims Act, 31 U.S.C. § 3729, *et seq.* (FCA).  Doc. 1.  Plaintiff alleges that Defendants

violated the FCA in connection with Small Business Administration (SBA) program

contracts administered by the Department of the Air Force (AF) and the National

Aeronautical and Space Administration, (NASA), both federal agencies.[1]   The

circumstances underlying the Complaint lead to the individual Defendants' prosecution

and conviction of criminal conspiracy and wire fraud charges following a jury trial.  *See*

*United States v. Anghaie*, Case No. 1:09-cr-37-MP-GRJ.   The individual Defendants are

now proceeding *pro se* in this case, and the Clerk entered a default as to the corporate

---

[1]As it pertains to this case, the False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B).

Defendant, New Era Technology, Inc. (NETECH), due to that Defendant's failure to obtain Counsel.  Docs. 55, 56.

Plaintiff has moved for summary judgment on all claims, and Defendants have moved for summary judgment on Counts 2 and 3 on statute of limitations grounds, and partial summary judgment as to damages on the remaining 20 counts of the Complaint. Docs. 20, 42.  Each party has responded in opposition to the other party's motion. Docs. 33, 46.[2]  Consideration of the motions was deferred pending settlement negotiations, but such negotiations have concluded in an impasse and this case is now set for trial on December 8, 2014.  Doc. 64.

For the following reasons, it is clear that Defendants' summary judgment motion asserting the statute of limitations as a defense to Counts 2 and 3 and contending that the United States incurred no damages is due to be denied as a matter of law. Accordingly, the undersigned recommends that Defendants' motion for summary judgment, Doc. 42, be denied.  The United States' summary judgment motion, Doc. 20, raises separate and complex factual issues stemming from the lengthy criminal trial, and therefore Plaintiff's summary judgment motion will be addressed in a separate Report and Recommendation.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any

[2]Defendants' summary judgment motion and response in opposition to Plaintiff's motion were filed through counsel.  The motions were referred to the undersigned for recommended disposition after Defendants' counsel withdrew from the case.

material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).  At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby, Inc.,* 477 U.S. at 249.  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

## Background

The following facts are undisputed by the parties.  NETECH was a Florida for

profit corporation formed in 1989 by Sousan Anghaie and Samim Anghaie.   Between

1999 and 2009, Samim Anghaie was employed full time as a professor at the University

of Florida and served as the Director of the Innovation Nuclear Space Power and

Propulsion Institute (INSPI) at UF, a UF-sponsored research center.   The Complaint in

this case concerns four funded contracts within the SBA's Small Business Innovation

Research Program (SBIR) and Small Business Technology Transfer Program (STTR),

as administered by NASA and the Air Force, that were awarded to NETECH for the

development of an innovative nuclear fuel for aerospace applications:  NNC07CA14C

("N14C"), NNM04AB19C ("N19C"), NNC06CA72C ("N72C"), and FA9550- 06-C-0099

("AF99").

Relative to these four and other contracts, the individual Defendants were

charged in a superseding indictment on December 20, 2010, with sixty-two counts of

violations of federal law including conspiracy, wire fraud, false statements to a federal

agency, and money laundering.   *See* Superceding Indictment, Case No. 1:09-cr-37-

SPM-GRJ, Doc. 69.

Defendants were granted a Judgment of Acquittal on ten substantive counts of

wire fraud and five substantive counts of money laundering (Counts 23-31, 42, 52-56) on

the grounds that such counts were barred by the general federal five-year statute of

limitations for criminal offenses. *See* Case No. 1:09-cr-37-SPM-GRJ, Doc. 114.  The jury

acquitted Defendant Samim Anghaie of eight substantive counts of wire fraud (Counts

10, 11, 32, 33, 34, 36, 38, 45).  *Id*.  Doc. 123.  The jury acquitted Defendant Sousan

Anghaie of nine substantive counts of wire fraud and one count of knowingly and willfully

making and using false documents (Counts 10, 11, 32, 33, 34, 36, 38, 44, 45, and 61).
*Id.* The jury was unable to reach a verdict on any of the counts involving allegations of
money laundering or, as to Sousan Anghaie, on the count of making false statements
(Counts 48-51, 57-60, 62). *Id.*

The Court entered a civil forfeiture judgment against Defendants in the amount of
$390,252.91. *Id.* Doc. 151. The Court declined, however, to award restitution to the
United States, finding that no actual loss to the United States, as the victim, had been
established for purposes of restitution. *Id.* Doc. 238.

The instant Complaint alleges 22 counts of FCA violations. Count 1 of the
Complaint alleges that Defendants engaged in a conspiracy to submit false claims in
connection with the contracts, in violation of 31 U.S.C § 3729(a)(3). Counts 2-22
collectively allege that Defendants made false certifications and representations when
initially submitting the contract proposals, when filing technical reports, and when
submitting invoices for payment, on 22 separate dates under four contracts. Some of
the claims are identical to the counts of conviction in the underlying criminal case, some
of the claims are identical to counts in the indictment for which Defendants were
acquitted, and some of the claims were not prosecuted in the criminal case. *See* Doc. 1;
Case No. 1:09-cr-37-MP-GRJ, Doc. 69 (superceding indictment).

## Discussion

### *The Civil False Claims Act*

A successful FCA claim requires proof of the following:  (1) a false or fraudulent
claim; (2) which was presented, or caused to be presented, by the defendant to the

United States for payment or approval; (3) with the knowledge that the claim was false. *United States v. R & F Properties of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir. 2005).  31 U.S.C. § 3731(b)(1) provides that a civil action under the False Claims Act may not be brought more than six years after the date on which the violation of the Act is alleged.  The limitations period for FCA claims is computed from "the date on which the violation of [the FCA] is committed," and the "violation" is the submission—not the payment—of a false claim.  *Smith v. United States*, 287 F.2d 299, 303-04 (5th Cir.1961) ("The six-year period is to be computed from the time of 'the commission of the act,' 31 U.S.C.A. § 235. The 'act' in question is the filing of the false claim.").   *See also Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409, 125 S.Ct. 2444, 2449 (2005) (time limit for FCA claims begins to run on the date the defendant submitted a false claim for payment).  The FCA's six-year limitation period may be tolled for three years from the date when "facts material to the right [of] action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances."  31 U.S.C. § 3731(b)(2).

**1.  Statute of Limitations**

With respect to the instant summary judgment motion, Counts 2-4 of the Complaint concern alleged false claims relating to contract N19C.  Counts 2 and 3, which are the subject of Defendants' asserted statute of limitations defense, allege transactions on January 19, 2006, and April 7, 2006.  Doc 1.  These transactions were not the subject of the criminal prosecution.  *See* Case No. 1:09-cr-37-MP-GRJ, Doc. 69 (superceding indictment).  Defendants contend that they are entitled to summary

judgment on Counts 2 and 3 because the six-year FCA statute of limitations expired prior to the May 11, 2012, filing of the Complaint.   *See* Doc. 42; 31 U.S.C. § 3731(b)(1). Defendants further contend that 31 U.S.C. § 3731(b)(2) provides a "safety net" in the event the material facts underlying a complaint were not timely discovered.   Defendants contend that NASA Special Agent Mazzella and the United States Attorney for the Northern District of Florida filed affidavits in a series of civil forfeiture cases on February 19, 2009, more than three years prior to the date the United States filed the instant action, reflecting that the Government was aware of all pertinent facts and law to support the present action.   Accordingly, Defendants argue that pursuant to 31 U.S.C. § 3731(b)(1) and (2), Counts 2 and 3 are time-barred by the statute of limitations.

The United States argues that the FCA claims in this case were timely filed because the Wartime Suspension of Limitations Act ("WSLA"), as amended by the Wartime Enforcement of Fraud Act of 2008 ("WEFA"), 18 U.S.C. § 3287, suspends the FCA's statute of limitations for the United States' FCA claims.   The Defendants' summary judgment motion does not reference the applicability of the WSLA and Defendants have not filed a reply contesting the United States' assertion that (1) the WSLA applies to civil FCA cases, and (2) the WSLA suspended the six-year limitations period with respect to the transactions alleged in Counts 2 and 3.[3]

---

[3]The Fourth Circuit recently observed that "[a]ll but one court, *United States v. Weaver*, 107 F.Supp. 963, 966 (N.D.Ala.1952) . . . , to have considered the issue of whether the WSLA applies to civil claims have found that it applies."   *United States ex rel. Carter v. Halliburton Co.*  710 F.3d 171, 180 (4th Cir. 2013) (citing *United States v. Witherspoon*, 211 F.2d 858 (6th Cir.1954); *United States ex rel. McCans v. Armour & Co.*, 146 F.Supp. 546 (D.D.C.1956); *United States v. BNP Paribas*, 884 F.Supp.2d 589 (S.D. Tex.2012)).  Inasmuch as Defendants have not disputed that the WSLA applies to civil FCA cases, and the weight of authority reflects that it does apply, this issue need not be discussed further.

Prior to October 14, 2008, the WSLA provided that:

When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancellation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.

18 U.S.C. § 3287 (2000). On October 14, 2008, the Act was amended to expand its operation to times "[w]hen the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b))[.]" 18 U.S.C.A. § 3287 (West 2010). The 2008 amendment lengthened the suspension period to "5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." *Id*.

For purposes of the 2008 amendment to the WSLA – and as the Court in the underlying criminal case concluded -- the congressional authorizations for use of force in Iraq in 2001 and 2002[4] trigger suspension of the FCA's limitation period, though there

---

[4]Authorization for Use of Military Force Against Iraq Resolution, of 2002, Pub. L. No. 107–243, 116 Stat. 1498 (2002); Authorization for Use of Military Force, Pub. L. No. 107–40, 115 Stat. 224 (2001).

has been no formal declaration of war. *United States of America v. Anghaie*, No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at *2 (N.D.Fla. 2011); *see also  United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 178–79 (4th Cir. 2013); *United States v. Arnold*  991 F.Supp.2d 1307, 1314 (S.D.Ga. 2014) (2008 amendment to WSLA clearly contemplates these authorizations as triggering suspension).  Further, as to counts for which the limitations period would have lapsed after the effective date of the 2008 WSLA amendment, the limitations period has been suspended.  *Anghaie*, 2011 WL 720044, at *2; *Arnold*  991 F.Supp.2d at 1314 (quoting *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998), for proposition that the "application of a statute of limitations extended before the original limitations period has expired does not violate the Ex Post Facto Clause.").

In this case, the transactions underlying Count 2 and 3 of the Complaint occurred on January 19, 2006, and April 7, 2006, prior to the October 14, 2008, effective date of the amended WSLA.  Because the six-year limitations period under the False Claims Act had not yet expired when the WSLA was amended, and there has been no termination of hostilities pursuant to the WSLA, the limitations period remains suspended for the claims asserted in Counts 2 and 3.[5]  *See Arnold* 991 F.Supp.2d 1307, 1316 (S.D.Ga. 2014) (citing *Halliburton Co.*, 710 F.3d at 179–80 (WSLA applies to any qualifying crimes since the beginning of hostilities because hostilities have not

---

[5] In the underlying criminal case, the district judge held that Defendants were entitled to a judgment of acquittal "as to the counts for which the limitations period had expired *prior to the effective date of the WSLA amendment*."  *Anghaie*, 2011 WL 720044, at *2.

terminated under the statute's language); *United States v. Pfluger*, 685 F.3d 481, 485

(5th Cir. 2012); *Anghaie*, 2011 WL 720044, at *2 (implicitly determining that there has

been no termination of hostilities).  Therefore, Defendants are not entitled to summary

judgment on Counts 2 and 3 of the Complaint on the ground that such claims are barred

by the statute of limitations.

**2.  Damages**

Defendants contend that the United States is precluded from seeking damages in

this case because the issue of damages was resolved in Defendants' favor in the

underlying criminal case.  Doc. 42.  As support for this argument, Defendants' point to

the Court's statements at sentencing that Defendant NETECH provided "valuable

innovative research" to the Government under the contracts and that "no actual loss to

the victims has been established in this case."  1:09-cr-37-SPM-GRJ, Doc. 238.  The

Court made these statements in connection with its conclusion that restitution should not

be awarded to the United States. *Id*.

In response to this assertion, the United States argues that the measure of

damages in a FCA case is different than a restitution award in a criminal case.  The

United States points to SBA regulations recognizing a presumption that the loss to the

SBA or its participating agencies stemming from fraudulent participation in SBA

programs is "the total amount expended on the contract, subcontract, cooperative

agreement, cooperative research and development agreement, or grant whenever it is

established that a business concern other than a small business concern willfully sought

and received the award by misrepresentation."  Doc. 46 (citing 13 CFR § 121.108).  The

United States further points out that the Court in the underlying criminal case entered a civil forfeiture judgment in the amount of $390,252.91, reflecting the amounts paid by the United States to Defendant in connection with the transactions for which Defendants were convicted of fraud.  In addition, the FCA provides for an award of treble damages and a statutory penalty of $11,000 per fraudulent billing.  *See* 31 U.S.C § 3729(a)(1).

The Eleventh Circuit has recognized that "[a]n order of restitution is not a judicial determination of damages.   Damages measure the amount of compensable loss a victim has suffered.   Restitution, by contrast, is an equitable remedy, 'subject to the general equitable principle that [it] is granted to the extent and only to the extent that justice between the parties requires.'"  *United States v. Barnette,* 10 F.3d 1553, 1556-57 (11th Cir. 1994).  In *Barnette*, the Eleventh Circuit declined to limit a damages award in a civil FCA case to the amount of restitution awarded by the district court, noting that the defendant's attempt to equate the sentencing judge's restitution order with a determination of damages was "unpersuasive".  *Barnette*, 10 F.3d at 1556-57.  The Court held that "[m]ore likely, the sentencing judge decided that the Government had lost at least $7 million and that Barnette could pay that amount, but left final resolution of the Government's damages claim to the ensuing civil case." *Id*.  Although the sentencing court in this case determined that no restitution should be awarded, the reasoning of *Barnette* nevertheless directs that a restitution finding in a criminal case does not foreclose the United States from seeking a different damages award in a subsequent civil case.  *See id*.

The Eleventh Circuit has also held that "[u]nder the [FCA], there is no set formula

for determining the government's actual damages . . . .  Case law indicates the measure of damages is generally determined to be the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding."  *United States v. Killough,*  848 F.2d 1523, 1532 (11th Cir. 1988) (citing *Brown v. United States*, 524 F.2d 693, 706 (Ct. Cl. 1975); *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir.1966); *United States v. Am. Precision Prods. Corp.*, 115 F.Supp. 823, 828 (D.N.J.1953)).  "The trier of fact must deduce from all the evidence presented what the fair market value was of the goods or services provided in order to calculate the actual damage the government suffered."  *Id.*

In view of this authority, Defendants' assertion that the United States cannot seek civil damages under the FCA because the sentencing court declined to order restitution should be rejected.

## <u>Conclusion</u>

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment On Counts 2 And 3 And Motion for Partial Summary Judgment As To Damages On All Remaining Counts, Doc. 42, should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 29th day of September 2014.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations**